Howell O. ATKINS, Petitioner,

v.

Charles WRIGHT, Respondent.

Civ. No. 3:93cv0308 AS.

United States District Court,
N.D. Indiana,
South Bend Division.

Jan. 26, 1994.

Howell O. Atkins, pro se.

David L. Steiner, Indianapolis, IN, for respondent.

### MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

On May 3, 1993, *pro se* petitioner, Howell O. Atkins, filed a petition seeking relief under 28 U.S.C. § 2254. The response filed by the respondents on December 15, 1993, demonstrates the necessary compliance with *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir. 1982). A traverse was filed on January 14, 1994, and has been examined. The state court record has been filed and examined pursuant to the mandates of *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

This petitioner is confined at the Westville Correctional Center, Westville, Indiana. He was convicted of the offense of assisting a criminal and determined to be a habitual offender in a bifurcated jury trial in the St. Joseph Superior Court, South Bend, Indiana. A direct appeal was taken from the sentence and conviction to the Court of Appeals of Indiana, and the Third District of that court, speaking through Judge Staton, affirmed the aforesaid conviction and sentence in an order entered on October 23, 1990, 561 N.E.2d 797.

The Supreme Court of Indiana denied transfer thereon February 13, 1991.

Basically, this petitioner has raised four issues here:

(1) his trial counsel had a conflict of interest;

(2) a fundamental due process violation resulting from the requirement that he wear restraints during trial;

(3) the exclusion of two African–American persons from his jury, in violation of *Batson v. Kentucky,* 476 U.S. 79[, 106 S.Ct. 1712, 90 L.Ed.2d 69] (1986); and

(4) insufficient evidence.

The facts that are found in the unpublished memorandum decision of the Court of Appeals of Indiana, beginning at page seven, are presumed to be correct. Justice Stewart, speaking for the Supreme Court of the United States in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), stated:

A judgment by a state appellate court rejecting a challenge to evidentiary sufficiency is of course entitled to deference by the federal courts, as is any judgment affirming a criminal conviction. But Congress in § 2254 has selected the federal district courts as precisely the forums that are responsible for determining whether state convictions have been secured in accord with federal constitutional law. The federal habeas corpus statute presumes the norm of a fair trial in the state court and adequate state postconviction remedies to redress possible error. See 28 U.S.C. § 2254(b), (d). What it does not presume is that these state proceedings will always be without error in the constitutional sense. The duty of a federal habeas corpus court to appraise a claim that constitutional error did occur—reflecting as it does the belief that the "finality" of a deprivation of liberty through the invocation of the criminal sanction is simply not to be achieved at the expense of a constitutional right—is not one that can be so lightly abjured.

*Id.* at 323, 99 S.Ct. at 2791. The Supreme Court in *Jackson* held:

We hold that in a challenge to a conviction brought under 28 U.S.C. § 2254—if the settled procedural prerequisites for such a claim have otherwise been satisfied—the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof beyond a reasonable doubt.

*Id.* (footnote omitted). *See also Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); *Dooley v. Duckworth,* 832 F.2d 445 (7th Cir.1987), *cert. denied,* 485 U.S. 967, 108 S.Ct. 1239, 99 L.Ed.2d 438 (1988); *United States ex rel. Haywood v. O'Leary,* 827 F.2d 52 (7th Cir.1987); *Bryan v. Warden, Indiana State Reformatory,* 820 F.2d 217 (7th Cir.1987), *cert. denied,* 484 U.S. 867, 108 S.Ct. 190, 98 L.Ed.2d 142 (1987); *Shepard v. Lane,* 818 F.2d 615 (7th Cir.), *cert. denied,* 484 U.S. 929, 108 S.Ct. 296, 98 L.Ed.2d 256 (1987); and *Perri v. Director, Department of Corrections,* 817 F.2d 448 (7th Cir.), *cert. denied,* 484 U.S. 843, 108 S.Ct. 135, 98 L.Ed.2d 92 (1987).

The determination of sufficiency of evidence under V of Judge Staton's opinion is based on state law considerations. However, under the formulation of *Jackson,* there is more than enough evidence to find this petitioner guilty of the offense of which he is charged as well as the finding of habitual offender.

Following *Jackson,* there is an increasingly long line of cases in this circuit that suggest that the facts found by the highest court of a state are presumed correct. *See Andersen v. Thieret,* 903 F.2d 526, 531 (7th Cir.1990).

■ In his direct appeal, this petitioner did not contend that his state trial counsel had a conflict of interest because he had been a deputy prosecutor at the time of his one of his previous convictions in 1972. He did claim a conflict of interest because he had filed a civil action against his attorney, representing some effort to use that device to delay criminal trial proceedings or to have another attorney assigned to his defense. He also failed to challenge the sufficiency of the habitual offender determination on his direct appeal in the Court of Appeals of Indiana.

The court has a choice of treating these alleged deficiencies as a failure to exhaust or to treat the claims as procedurally defaulted, and with some reluctance, this court takes the latter course. In determining how, or even whether, to review the state court's decision, this court must be mindful of the interests of comity and finality. *Teague v. Lane,* 489 U.S. 288, 308–309, 109 S.Ct. 1060, 1074, 103 L.Ed.2d 334 (1989). *See also McCleskey v. Zant,* 499 U.S. 467, 489, 111 S.Ct. 1454, 1468, 113 L.Ed.2d 517 (1991); *Coleman v. Thompson,* 501 U.S. 722, ——, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991), and *Brecht v. Abrahamson,* 944 F.2d 1363 (7th Cir.1991), *cert. granted,* —— U.S. ——, 112 S.Ct. 2937, 119 L.Ed.2d 563 (1992), *aff'd,* —— U.S. ——, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1992).

In *Harris v. Reed,* 489 U.S. 255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989), the Supreme Court held that the "plain statement" rule announced in *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), applies with equal force to federal habeas corpus proceedings. Under the *Harris* standard, a state procedural default precludes federal habeas review only if the last state court rendering a judgment in the case clearly and expressly states that its judgment rested on an adequate and independent state procedural bar. *Id.* at 263, 109 S.Ct. at 1043. *See Ylst v. Nunnemaker,* 501 U.S. 797, ——, 111 S.Ct. 2590, 2593, 115 L.Ed.2d 706 (1991) (state procedural bars are not immortal; they may expire because of later actions by state courts. If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal court review that might otherwise have been available.).

■ Under *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) and its progeny, an adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the petitioner can show cause for the default and resulting prejudice, or demonstrate that failure to consider the federal claim will result in a "fundamental miscarriage of justice." *Murray v. Carrier,* 477 U.S. 478, 485, 106

S.Ct. 2639, 2643, 91 L.Ed.2d 397 (1986). *See also Smith v. Murray,* 477 U.S. 527, 537, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986); *Harris v. Reed,* 489 U.S. at 260–66, 109 S.Ct. at 1041–45; *Teague v. Lane,* 489 U.S. at 308, 109 S.Ct. at 1074; *Coleman v. Thompson,* 501 U.S. at ——, 111 S.Ct. at 2565; *Bae v. Peters,* 950 F.2d 469, 480 (7th Cir.1991) and *Williams v. Chrans,* 945 F.2d 926, 932 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3002, 120 L.Ed.2d 877 (1992).

■ Ineffective assistance of counsel "supplies 'cause' only when the Constitution requires the state to assure adequate legal assistance." *See Coleman v. Thompson,* 501 U.S. at ——, 111 S.Ct. at 2566. *See also Williams v. Chrans,* 945 F.2d at 932; *Prihoda v. McCaughtry,* 910 F.2d 1379, 1386 (7th Cir.1990), and *Morrison v. Duckworth,* 898 F.2d 1298, 1300–01 (7th Cir.1990).

This court is certainly familiar with the sensitive problems that inhere in defense counsel having conflicts of interest. A significant case in this area is *Ross v. Heyne,* 483 F.Supp. 798 (N.D.Ind.1980), *aff'd in part, rev'd in part,* 638 F.2d 979 (7th Cir.1980). In a slightly different context, the Court of Appeals in this circuit has recently dealt with this issue in an appeal under 28 U.S.C. § 2254, where a state trial judge had previously acted as a prosecutor of a defendant that appeared before him in the criminal context. *See DelVecchio v. Ill. Dept. Corrections,* 8 F.3d 509 (7th Cir.1993). This is not that case, either.

■ When this case was first filed in the St. Joseph Superior Court, this petitioner sought the appointment of counsel and a public defender was appointed. Trial was set for October 17, 1988, but rescheduled when the petitioner hired a private attorney. The trial was then rescheduled to February 15, 1989. A hearing was had in the state trial court on February 3, 1989, after the private attorney was asked by the petitioner to withdraw on or about February 2, 1989. The petitioner then insisted on representing himself, which he has a Sixth Amendment right to do. Consistent with the Supreme Court teaching in *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the state court trial judge permitted this petitioner to act *pro se* with stand-by counsel. A further hearing was then conducted on February 20, 1989, when the petitioner again sought the appointment of yet another attorney to act as co-counsel. Yet another hearing was held on February 27, 1989, when the petitioner sought the removal of standby counsel, arguing that he had sued standby counsel in federal court, and that there was now a conflict of interest. The state court attempted to accommodate the petitioner's request by appointing Mr. Hilgendorf to act as his counsel. Mr. Hilgendorf represented the petitioner when his case was scheduled for trial on March 27, but the petitioner informed his counsel that he did not believe that the case could be tried that day because he did not want Mr. Hilgendorf to represent him and had filed a lawsuit against him in the federal court (this court). On that day, the state trial judge denied the petitioner's request to act as co-counsel, and a discussion ensued in which it was apparent that this petitioner not only wanted appointed counsel, but wanted appointed counsel of his own choice. Clearly, the Sixth Amendment of the Constitution of the United States does not guarantee counsel of choice. *See United States ex rel. Kleba v. McGinnis,* 796 F.2d 947, 952 (7th Cir.1986), and *United States ex rel. Spurlark v. Wolff,* 699 F.2d 354 (7th Cir.1983).

The state court judge, proceeding with great care, found that Mr. Hilgendorf was a competent attorney and that the petitioner was being effectively represented by him. This case proceeded to trial, but a mistrial was declared based upon an objection by Mr. Hilgendorf concerning an evidentiary matter. A retrial was commenced on April 3, 1989, and this petitioner again attempted to remove Mr. Hilgendorf as his attorney, but the state trial judge found no basis for that removal.

The record in this case has gamesmanship written all over it. This court is all too well aware that in compliance with the demands of *Faretta,* such gamesmanship is frequent. This court has observed over a quarter of a century as a state and federal judge that seldom do criminal defendants who want to represent themselves have any great success.

This is one of the reasons that Justice Stewart emphasized in *Faretta* that such warnings should be made. In this case, a very able and experienced state trial judge literally bent over backwards to accommodate the various and sundry demands of this petitioner.

It is also elementary that a criminal defendant cannot per se create a conflict of interest with his own attorney by suing that attorney. If that were possible, there would be no end to the process of appointed counsel, which is difficult at its very best. The Court of Appeals of Indiana, speaking through Judge Staton, dealt with the issue of appointed counsel and effective assistance of counsel in Parts VI and VII of his opinion. Those are under state law, but there is no violation shown of either the due process clause of the Fourteenth Amendment or of the provision with regard to counsel in the Sixth Amendment under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ The issue is raised with regard to restraints, and that issue is covered in Part III of Judge Staton's opinion. When one compares the complaint here of this petitioner with the careful dealing with the issue of restraints by Judge Staton in Part III, the issue must be approached with a careful delineation of what actually happened in the state trial court. First of all, this petitioner is not here to be heard to make complaint with regard to what may have occurred in the first aborted trial. The record indicates in that trial that the state trial judge required this petitioner to wear an ankle brace restraint for security reasons. The record indicates that the state court judge should not be second-guessed in that regard, since it is well known among those who have had the responsibility to conduct criminal trials in this nation, that violence is not unheard of in courtrooms and in courthouses. There is a vagueness in the record as to whether those leg restraints were required in the second trial, but even assuming that they were, there is no indication that the jury was aware of them, and certainly there is no indication in the second trial resulting in his conviction, that anything was done that violated the due process requirement for a fundamentally fair trial.

Once upon a time, this court in *Osborne v. Duckworth,* 567 F.Supp. 427 (N.D.Ind.1983), granted relief under 28 U.S.C. § 2254 simply because a criminal defendant was seen by the jury in handcuffs in the Adams County Courthouse in Decatur, Indiana, and this court granted relief under 28 U.S.C. § 2254, which was reversed on appeal. *See* 757 F.2d 1292 (7th Cir.1985). In any event, specifically, where there is no evidence that a jury was aware of the existence of the restraint, which is quite probable here, there is no constitutional violation. *See United States v. Pallais,* 921 F.2d 684 (7th Cir.1990), *cert. denied,* — U.S. —, 112 S.Ct. 134, 116 L.Ed.2d 101 (1991). This petitioner was anything but a model participant in the state criminal trial. At least two points, he suggested to the state trial court that the court might have to restrain him, and engaged in repeated outbursts and admitted attempts to cause a mistrial. He was repeatedly warned. In his twilight days on the Supreme Court of the United States, Justice Black, speaking for the court in *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), outlined the steps which a trial court could take in regard to an unruly defendant. Judge Brook did not violate these standards in this case.

This brings the court to the third and most difficult issue; whether there has been a violation of *Batson.* The care with which this issue must be approached is readily evident in an appeal from this court in *Splunge v. Clark,* 960 F.2d 705 (7th Cir.1992). This petitioner is of the African–American or Black race. Apparently, two prospective jurors of the same race were struck from the jury panel, one for cause and one as a result of a peremptory challenge by the prosecutor. The record needs to be examined under the composite teaching of *Batson,* and *Hernandez v. New York,* 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). One of the recurring problems for United States district courts in this area is the adequacy of state court records in regard to the exercise of peremptory challenge. That does not appear to be a problem in this case. Generally, the

**462**

factual findings of state courts under § 2254, and more specifically under *Hernandez,* may be presumed as correct under the larger tent of *Batson.* No argument is made here with regard to retroactivity of *Batson.* Therefore, it must be presumed that in general it applied.

The Court of Appeals of Indiana in Part I and II of Judge Staton's opinion deal with the prospective juror question. One juror was struck on a racially neutral basis of state law, as indicated in Part I of that opinion and no further discussion needs to be made of it. The second prospective juror that comes within the ambit of *Batson* needs to be examined more carefully. Apparently, there were three members of the venire who were of the same race as the petitioner. One was excused, as indicated, on a racially neutral basis of state law. The second was actually seated as a juror, and the third juror in question, Maxine Smith, was the subject of a peremptory challenge. It is the Maxine Smith challenge that must be examined carefully in the record, as Judge Staton did in Part II of his opinion.

 As Judge Staton correctly emphasized, there must be a determination of purposeful discrimination by the prosecutor. Deference is given to the decision of the state trial court in that regard. In this case, the state trial court found that this petitioner had not met his burden of establishing purposeful discrimination in the prosecutor's exercise of jury challenges, and made an adequate record under *Hernandez* to that effect. The prosecutor in this case challenged both jurors of the Black race, as well as jurors of the White race, and a jury was seated consisting of both. It was determined that there were valid reasons for the challenge to Maxine Smith, since members of her family had knowledge and had given statements concerning events that could be involved in this case. A careful examination of this court as an aftermath to *Splunge,* convinces it that Judge Staton and Judge Brook of the state judiciary have carefully met the demands of *Batson* and *Hernandez,* and that no constitutional error has been made.

It needs to be emphasized that this court does not sit as a trier de novo in state court criminal proceedings and does not sit as a court of general common law review. The collateral review that is envisioned by § 2254 focuses on violations of the federal Constitution. *See Bell v. Duckworth,* 861 F.2d 169 (7th Cir.1988), *cert. den.,* 489 U.S. 1088, 109 S.Ct. 1552, 103 L.Ed.2d 855 (1989).

When the record in this case is carefully reviewed, and it has been, this court fails to find any validity to the alleged basis for relief under 28 U.S.C. § 2254. Such is now **DENIED. IT IS SO ORDERED.**